IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MIGUEL MOLINA, | : | No. 3:18cv1391 |
| Plaintiff | : |  |
| v. | : | (Judge Munley) |
| LAURAL R. HARRY, et al., | : |  |
| Defendants | : |  |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM OPINION

**I.  BACKGROUND**

Miguel Molina, a Pennsylvania state prisoner previously confined at Pennsylvania State Correctional Institution Camp Hill ("SCI Camp Hill"), filed this 42 U.S.C. § 1983 complaint alleging that the conditions at SCI Camp Hill amount to cruel and unusual punishment in violation of the Eighth Amendment, and that various individuals violated Molina's First Amendment rights by retaliating against him for filing grievances.  (Doc. 1).  Molina's Eighth Amendment claim centers around allegations that SCI Camp Hill's: shower drains contained larva and insects and emitted smells of sewage, and shower area was consistently dirty and stained with mildew; cells and ventilation system contained rust; and activity grounds were covered in goose feces that was not cleaned by prison staff.  (*Id.* at 4-5, 12-13).  As for Molina's First Amendment claim, he asserts that Defendants fired Molina

1

from his prison job and transferred him to another unit within SCI Camp Hill in retaliation for filing grievances. (*Id.* at 5, 14).

With leave of the Court, Molina filed a supplement to his complaint. (Doc. 21). Molina supplemented his Eighth Amendment claim to include allegations related to his time in the Special Housing Unit ("SHU"), where other inmates allegedly made loud, constant noise, and lighting was left on 24-hours per day. (*Id.* at 4). Molina also supplemented his First Amendment claim, alleging that Defendants continued to retaliate against him by unjustly confiscating his property, issuing fabricated misconduct reports, and sending him to the SHU. (*Id.* at 2-3).

Defendants have filed a motion to dismiss in which they assert that the complaints should be dismissed because Molina seeks to improperly join disparate claims and, in any event, fails to state a claim for relief. (Docs. 23, 30). Molina has filed a brief in opposition to that motion (Docs. 32, 33), and the matter is now ripe for disposition.

## II. DISCUSSION

"In reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), [this Court must] accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation

marks omitted). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Id.* "This requires a plaintiff to plead sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (internal quotation marks omitted).

  A. *Eighth Amendment Claim*

Turning first to the sufficiency of Molina's allegations, Molina alleges that his conditions of confinement at SCI Camp Hill violated the Eighth Amendment's prohibition against cruel and unusual punishment. (Docs. 1, 21). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" and "applies to both an inmate's formal sentence and to 'deprivations that were not specifically part of the sentence, but were suffered during imprisonment.'" *Mammana v. Fed. Bureau of Prisons*, __ F.3d __, No. 18-2937, 2019 WL 3808506, at *2 (3d Cir. Aug. 14, 2019) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "However, because that prohibition is directed only toward punishment, it applies only to deprivations that constitute an unnecessary *and wanton* infliction of pain, including those that are totally without penological justification." *Id.* (footnotes and internal

3

quotation marks omitted).

"In challenges to prison conditions, such as the one here, 'a prison official violates the Eighth Amendment only when two requirements are met.'" *Id.* at *3 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "First, 'the deprivation alleged must be, objectively, sufficiently serious,' resulting in 'the denial of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). "In a challenge to [prison] conditions, 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (emphasis deleted).

"Second, 'a prison official must have a sufficiently culpable state of mind.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). "'In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 834 (ellipsis omitted)). "In that context . . . 'the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Although the conditions of Molina's confinement at SCI Camp Hill were undoubtedly unpleasant, the complaint and supplemental complaint fail to state an Eighth Amendment claim for two reasons. First, there is no allegation that any Defendants are personally responsible for—or have any control over—cell conditions are SCI Camp Hill.[1] In the absence of such allegations, Defendants may not be held liable.[2] *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved" (citation and internal quotation marks omitted)).

---

[1] Molina's attempt to hold Defendants liable in their official capacities falls short in two respects. First, to the extent that Molina seeks monetary damages, "state officials, sued for monetary relief in their official capacities, are [not] persons under § 1983" and are therefore not amendable to suit. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Additionally, the complaint fails to assert that the conditions at SCI Camp Hill result from a state policy or practice, as is necessary to demonstrate that Molina is entitled to other relief. *See Vargas v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015) (setting forth elements necessary to sue officials in their official capacities).

[2] To the extent that Molina attempts to hold Defendants responsible based on their failure to respond favorably to his grievances, such actions are insufficient to establish liability. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews"); *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (holding "the District Court is correct that an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement").

Second, the conditions in general population as outlined by Molina are insufficient to state an Eighth Amendment claim. As to SCI Camp Hill's showers, Molina complains that the shower drains had worms and other insects, and that the showers were dirty and had mildew and occasionally smelled of sewage. (Doc. 1 at 4). The United States Court of Appeals for the Fourth Circuit reviewed similar conditions in *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985). There, the prison's shower area contained mold and mildew, dripping shower heads, rust stains, and the occasional loss of cold water. *Id.* at 984. Because the prison attempted to clean the showers and there was no evidence of disease resulting from the mold, the Fourth Circuit found no constitutional violation. *Id.* Similarly, absent additional information regarding the frequency, duration, or health risks associated with the conditions at SCI Camp Hill's showers, the alleged conditions cannot be said to pose a "substantial risk of serious harm" to inmates. *Farmer*, 511 U.S. at 834; *cf. J.P. v. Taft*, 439 F. Supp. 2d 793, 810 (S.D. Ohio 2006) (cold showers and worms "coming out of the [shower] drain" insufficient to establish Eighth Amendment violation).

As to Molina's claim that there is rust in the cells and ventilation systems, the mere presence of rust, absent an allegation "that any . . . health problems were caused by . . . [the] rust" is insufficient to state a claim under

the Eighth Amendment. *Kates v. Bledsoe*, No. 3;11-CV-0391, 2013 WL 4417656, at *7 (M.D. Pa. Aug. 14, 2013), *aff'd sub nom. Kates v. USP Lewisburg Warden*, 547 F. App'x 93 (3d Cir. 2013). *Cf. Lisle v. Welborn*, __ F.3d __, No. 18-1595, 2019 WL 3492163, at *11 (7th Cir. Aug. 1, 2019) (holding "rust on the [cell] bars and 'corroded feces' in the toilet" does not "deviate[] substantially from the ordinary conditions of prison life").

Finally, the presence of goose feces in the recreation yard "falls far short of showing that prison conditions fell below the requisite minimal civilized measure of life's necessities" and plainly cannot establish a violation of the Eighth Amendment. *Solano-Moreta v. Washington*, No. 2:18-CV-111, 2019 WL 1466302, at *8 (W.D. Mich. Apr. 3, 2019). *See also Silsby v. Sloan*, No. 1:18 CV 1832, 2019 WL 2107321, at *3 (N.D. Ohio May 14, 2019) (same); *Horsman v. Bentley*, No. 2:11CV769-MHT, 2014 WL 6673847, at *9 (M.D. Ala. Nov. 24, 2014) (conditions including, inter alia, "the presence of bird droppings," does not violate Eighth Amendment).

Consequently, none of the conditions are individually violative of the Eighth Amendment. Moreover, the various issues do not connect in such a way that they "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need" and therefore cannot, in the aggregate, form a deprivation of Molina's Eighth Amendment rights. *Wilson*, 501 U.S.

at 304. The Court will therefore dismiss Molina's Eighth Amendment claims related to his confinement in general population at SCI Camp Hill.

The allegations contained Molina's supplemental complaint regarding the conditions in SCI Camp Hill's SHU are, however, sufficient to state a claim for relief. First, Molina asserts that there were "large bright lights directly in front of his bed . . . [that] shone into his cell (24) hours per day, making it impossible for him to receive uninterrupted sleep" which resulted in sleep deprivation and depression. (Doc. 21 at 4). As the United States Court of Appeals for the Third Circuit recently stated, "bright, constant illumination that causes grave sleeping problems and other mental and psychological problems can establish an Eighth Amendment deprivation."[3] *Mammana*, __ F.3d __, 2019 WL 3808506, at *4. Moreover, while Molina's complaint about noise in the SHU appears trivial,[4] such noise would

---

[3] The Court notes that Molina's complaint contains reference to the fact that Defendants leave the lights on 24-hours per day due to security concerns. (Doc. 21 at 5). This may ultimately justify the use of such lighting in the SHU. *Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64, 67-68 (3d Cir. 2013).

[4] *See Whitney v. Wetzel*, 649 F. App'x 123, 127 (3d Cir. 2016) (contention that prisoner was "forced to live with mentally ill inmates at the SMU, where inmates banging on toilets and sinks created intolerable noise" demonstrated, at most, "that the noise in the SMU is 'irritating,' which 'cannot fairly be said to inflict cruel and unusual punishment'" (quoting *Peterkin v. Jeffes,* 855 F.2d 1021, 1027 (3d Cir. 1988)); *Oliver v. Powell*, 250 F. Supp. 2d 593, 604-05 (E.D. Va. 2002) ("Communal living conditions, such as the case in prison, will inherently produce some undesirable characteristics . . [h]owever, noise in the cell blocks are part of the ordinary incidents of prison life. It is doubtful that any prison environment will remain completely silent when inmate are trying to sleep").

constitute a "mutually enforcing" condition that boosts—if only marginally—Molina's claim that the conditions of confinement in SHU prevent sleep. *Wilson*, 501 U.S. at 304. Taken together, Molina alleges sufficient facts in support of an Eighth Amendment claim. Nevertheless, any claim related to the conditions of confinement at SCI Camp Hill's SHU must be dismissed because—as discussed previously—Molina has failed to allege that Defendants are personally responsible for such conditions.

B. *First Amendment Retaliation Claim*

Molina next asserts that Defendants retaliated against him for filing grievances. (Doc. 1 at 5, 14; Doc. 21 at 2-3, 6). Specifically, Randy Blease threatened to have Molina fired from his prison job if he filed another grievance and, within three weeks of filing such a grievance, Jennifer Digby fired Molina from his job. (Doc. 1 at 5). Additionally, after Molina filed his complaint, Tim Hornung issued fabricated misconduct reports, placed Molina in the SHU, and improperly confiscated Molina's personal property as retaliation for Molina filing grievances and this complaint. (Doc. 21 at 6). Hornung also allegedly threatened to send Molina to the SHU if he filed another grievance. (*Id.*).

"To state a claim for retaliation, a prisoner must allege that: (1) he was

9

engaged in constitutionally protected conduct, (2) 'he suffered some adverse action at the hands of prison officials,' and (3) 'his constitutionally protected conduct was a substantial or motivating factor in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). Adverse action is any action "taken by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016).

Molina's complaint adequately states a claim against Blease, Digby, and Hornung. First, Molina alleges that he engaged in protected speech by filing grievances and a civil complaint. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Second, "the termination of prison employment constitutes adverse action sufficient to deter the exercise of First Amendment rights," *Wisniewski*, 857 F.3d at 157, as does placement in the SHU. *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). Lastly, Molina's allegations directly connect his firing and placement in the SHU with his protected speech. (Doc. 1 at 5; Doc, 21 at 6). Molina's First Amendment claim against Blease, Digby, and Hornung will therefore be allowed to proceed.

However, Molina's complaint and supplemental complaint do not connect any of the other named Defendants with any alleged retaliation. In

the absence of such allegations, dismissal of Molina's First Amendment claim is appropriate as to the other Defendants. *Baraka*, 481 F.3d at 210. Although Defendants request that the Court deny Molina leave to amend his complaint, it is not clear that such amendment would be futile, and the Court will therefore grant leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

C. *Joinder of Claims*

Finally, Defendants move to dismiss Molina's supplemental complaint on the ground that Defendants and claims contained therein are improperly joined. (Doc. 30 at 4-6). With respect to the permissive joinder of parties, Fed. R. Civ. P. 20(a)(2) allows the joinder of persons if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." "The purpose of Rule 20(a) is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple law suits." *Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78, 81 (M.D. Pa. 2015). Thus, the joinder of claims and parties

is "strongly encouraged" when appropriate. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

The Court concludes that Blease, Digby, and Hornung are properly joined. Their alleged conduct is connected by a "series of transactions or occurrences," specifically, alleged retaliation taken to punish Molina for filing grievances and a civil suit. Furthermore, the incidents all share common questions of law and may also involve overlapping questions of fact, particularly with respect to Blease and Digby. Defendants motion to sever will therefore be denied as to Blease, Digby, and Hornung.

With regard to the other Defendants, given the lack of clarity as to which Defendants were involved in the purported Eighth Amendment violations, the Court cannot determine at this stage whether the parties may properly be joined. Defendants' motion to dismiss on that ground will therefore be denied at this time, but without prejudice to their right to refile should Molina file an amended complaint that addresses the factual deficiencies identified by the Court.

**III.   Conclusion**

For the foregoing reasons, Molina's First Amendment retaliation claim against Blease, Digby, and Hornung shall proceed. Molina's remaining claims are dismissed without prejudice.

An appropriate Order follows.

BY THE COURT:

Date: 8/22/19

**s/James M. Munley**

**JUDGE JAMES M. MUNLEY**
**United States District Court**